MINNIE SMITH, REVIVED IN NAME OF FAYE SMITH, EXECU-
TRIX, APPELLEE, v. NATIONAL ACCIDENT INSURANCE
COMPANY, APPELLANT.

FILED MARCH 6, 1925.    No. 23034.

1. **Insurance: CAUSE OF DEATH: CIRCUMSTANTIAL EVIDENCE.**
   Where an accident insurance policy provides for payment of loss when the death of the insured is caused by external, violent

and accidental means, the death of the insured in such manner, within the meaning of the terms of the policy, may be established by circumstantial evidence.

2.   ———:   ———:   SUFFICIENCY OF EVIDENCE.   Evidence examined and set out in the opinion, *held* sufficient to warrant the inference that insured fell and struck his head on a water-tank; that such fall was accidental; and that death was caused through external, violent and accidental means.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*Hainer & Flansburg* and *Julius D. Cronin,* for appellant.

*J. A. Donohoe, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

GOOD, J.

This is an action on an accident insurance policy by the beneficiary therein named, to recover for the death of the insured by accidental means. The defense is that the death of the insured was not caused by external, violent and accidental means. Plaintiff recovered. Defendant appeals.

The policy in question was issued to the insured, Eugene H. Smith, insuring said Smith, for a term of five years from the date of the policy, against bodily injuries resulting in death, effected directly and independently of all other causes through external, violent and accidental means, and where there are some external and visible marks of an injury.

The following pertinent facts are shown by the record: On the morning of July 6, 1920, and within the lifetime of the policy, the insured, Eugene H. Smith, was found dead, with his head submerged in water in a small watering tank in a pasture in which insured kept a milch cow. The watering tank consisted of half of a kerosene barrel, located from six inches to three feet inside the south fence of the pasture. The fence consisted of either two or three wires, the top wire being loose enough so that a person, by press-

ing the wire down, could step over the fence at a point just east of the tank. The surface of the ground immediately around the tank for a distance of five or six feet was bare where the grass had been tramped out by the animals drinking at the tank. In the latter part of the night previous, there had been a heavy rain and the ground around the tank was soft and muddy, so that, as one witness stated, he could stick his finger into the ground to a depth of an inch or an inch and a half.

It was the custom of Mr. Smith to go to the pasture every morning at about 7 o'clock, or a little before, to milk his cow. On the day previous to his death Mr. Smith and his family had attended a celebration at Orchard, and returned to his home at Page, Nebraska, about 10:30 o'clock at night, after which he went down to the business part of the village and returned to his home about midnight. At about this hour one of Mr. Smith's daughters, who had also attended the celebration and had come home on a night train, came into the house, and her father was then reading his newspaper. She talked with her father for a few moments and he was in a pleasant, jolly mood. This was the last that was seen of him alive. At that time there were no marks or indications of any injury noticeable upon his person. The next seen of him was by a neighbor, who also kept a cow in the same pasture, and who, on going to the pasture to milk his own cow at about 7 o'clock in the morning, saw a milk pail by the side of the water-tank. On going near the tank he discovered the body of Mr. Smith lying over the tank, with his head and left arm in the tank and under the water'; the right arm outside of the tank and resting upon the milk pail, with, possibly, the bail of the pail over his right arm. His head was to the west and his feet to the east, the body parallel with the fence adjacent to the tank. A careful examination of the ground around the tank was made, which disclosed no tracks leading thereto, save two foot-marks just east of the tank, indicating that Mr. Smith had stepped over the fence just east of the tank and on the toe or ball of his foot, and that the

foot had slipped in the mud, showing one foot to have slipped forward and the other slightly backward. The toe of one shoe was resting at the end of one of the marks where his foot had apparently slipped. There was no mud on his shoes. When the body was removed from the tank it was ascertained that his hat was on his head and his glasses were on, unbroken. When the hat was removed there was disclosed a bruise or abrasion over the right eye, an inch or more long and a half-inch wide. The bruised place was raised or swollen to the thickness of a lead pencil, and was slightly discolored, but the skin was not cut. There was also some blood in his mustache beneath the nose. The body was cold, but *rigor mortis* had not set in, or at least the body was not yet stiff, thus indicating that death had occurred but a short time before. There was no evidence of any struggle. There was no autopsy.

It is the theory of the plaintiff that Mr. Smith went to the pasture in the morning, as usual, to milk his cow, and that upon stepping over the fence his foot slipped and he fell, striking his head on the tank, probably rendering him unconscious, and that, with his head submerged in the water in the tank, he was drowned or suffocated.

There was evidence on behalf of defendant tending to show that nearly two years prior to this time Mr. Smith had suffered an attack of influenza, which left him with a weak heart; that at one time he fainted in a barber shop, and that at other times, in his place of business, he evinced great weakness and complained of his heart. For many years immediately preceding his death, Mr. Smith was engaged in the banking business in Page. For some time prior to his death his bank had been in an insolvent condition. There was evidence tending to show that Mr. Smith had violated the banking laws by making false entries in the bank books, and it is the theory of the defendant that Mr. Smith either committed suicide because of worry and dread over possible exposure in his banking transactions, or that the worry and fear had induced an attack of heart failure, and that his death was due either to suicide or to

his heart disease. There is evidence on behalf of the plaintiff tending to show that, while Mr. Smith had suffered from a weak heart for several months after his attack of influenza, he had entirely recovered therefrom, and for a year or more had been in his usual good health, and that he had not appeared to be laboring under any mental stress or worry.

Defendant urges that the circumstances disclosed are not sufficient to warrant the inference that death was due to violent and accidental means; that it is not proper to build one inference upon another in order to establish a fact which should be proved, and urges that in this case it is necessary, in order to permit a recovery, to infer from the facts proved: First, that Smith had a fall; second, that the fall was accidental; and third, that death was the proximate result of accident rather than of disease.

That one inference may not be based solely on another inference may be conceded to be fundamentally sound. The real question presented, however, is whether death by external, violent and accidental means, within the meaning of the insurance policy, may be proved by circumstantial evidence. An affirmative answer to this question has been so often given by the decisions of this and other courts that the rule may be said to be firmly established. In making application of the rule to the instant case, it is necessary to determine whether the circumstances proved warrant the inferences: First, that the insured fell; second, that the fall was accidental; and, third, that the fall, rather than disease, was the proximate cause of death. We are of the opinion that each and every one of these inferences may be drawn from the evidence.

The circumstances clearly indicate that Smith entered the pasture by getting over the fence immediately east of the water-tank. The circumstances also indicate that upon stepping over the fence his foot slipped, so that his toe was at the end of the mark showing where his foot had slipped, all clearly indicating a fall. There is nothing from which an inference could be fairly drawn that it was other than

accidental.  The foot slipping back would naturally pre-
cipitate the body forward or toward the tank.  The fact that
insured's hat and glasses were on his head and that his
milk pail was evidently on his arm or in his hand when he
fell further indicates an accident.  Besides, there is nothing
to indicate, or from which one could infer, that the fall was
premeditated.  Therefore, we think that the inference may
be fairly drawn that there was a fall and that it was acci-
dental.  The great weight of the evidence is to the effect
that Mr. Smith had recovered from his attack of influenza
at least a year before the accident, and there is nothing to
indicate that he was suffering from any serious heart
trouble at the time.  The wound on his forehead would be
precisely where one would expect to find it if, in the fall, he
had struck his head upon the tank.  As he was facing the
tank, he must have been near to the right side thereof, since
his right arm was hanging over the side of the tank and
his left arm and head were in the tank.  The wound was
over the right eye and would be in the place where one
would naturally expect it to be if he had fallen against the
outer edge of the tank.  The fact that his hat was on his
head would account for the skin not being entirely cut
through.  The further fact that the wound was slightly
discolored would indicate that it was of recent occurrence
and very shortly before death.  The further fact that it was
raised and swollen clearly indicates that it occurred before
death.  The physicians testified that such a wound could
produce unconsciousness, and that, with his head submerged
in water, death would soon follow.  If death had been due
to heart disease, so that there would have been a stopping
of circulation, the wound on his head would not have swol-
len, since circulation of the blood would be necessary to
cause the swelling from the congestion of the blood.  Un-
der the facts and circumstances disclosed by the record, we
think every inference that was necessary to entitle the
plaintiff to recover could be drawn from the evidence before
the jury.

So far as the suicide theory is concerned, it is not very

seriously argued. That such an act should have been contemplated by the insured and carried out in the manner disclosed seems highly improbable.

We are of opinion that the verdict is sustained by the evidence. The judgment is right, and is therefore

AFFIRMED.